[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 7, 2005
THOMAS K. KAHN
CLERK

————————————

No.  03-12358

————————————

D. C. Docket No. 02-00040 CV-FTM-29-DNF

K.M. and J.M., individually, and on behalf of M.M.,
a minor,

Plaintiffs-Appellees,

versus

SCHOOL BOARD OF LEE COUNTY FLORIDA,

Defendant-Appellant,

STATE OF FLORIDA, DEPARTMENT OF MANAGEMENT
SERVICES, DIVISION OF ADMINISTRATIVE HEARINGS,

Defendant.

————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————

**(October 7, 2005)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI[*], Judge.

PER CURIAM:

Defendant-Appellant School Board of Lee County ("Board") appeals from the award of monetary damages under 42 U.S.C. § 1983 for violation of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 - 1482.

The Board appeals the denial of its motions for judgment as a matter of law and for a new trial. The Board argues that the district court erred in denying judgment as a matter of law because (1) § 1983 does not permit recovery for IDEA violations, (2) even if such recovery was permitted, Plaintiffs did not establish the Board had a policy or custom that inflicted Plaintiffs' injury as § 1983 liability requires and (3) Plaintiffs failed to establish that the Board's acts were the proximate cause of any damages they suffered. The Board argues that the district court erred in denying its motion for a new trial because (1) the verdict was against the great weight of the evidence, (2) the jury ignored jury instructions, misapprehended the issues, and was influenced by sympathy and prejudice, and (3) the district court erred in excluding certain testimony on the Board's conduct.

---

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade sitting by designation.

Because the evidence overwhelmingly supports Defendant's position that the Board had no policy or custom of denying potentially disabled students access to due process hearings or delaying delivery of student records to their families, we reverse the district court's denial of Defendant's motion for judgment as a matter of law and remand for further proceedings consistent with this opinion. Because we reverse the district court's decision, we deny Plaintiffs' motion for attorney's fees.

STATEMENT OF FACTS

M.M. was a student at Three Oaks Middle School ("Three Oaks") in the Lee County School district. During his seventh and eighth grade years, his grades began to decline; and he exhibited problems with his behavior and attitude. M.M.'s mother and aunt, an Exceptional Student Education ("ESE") teacher, met with Three Oaks teachers and counselors to discuss M.M.'s problems in October 2001. At the meeting, the family members and school officials prepared an Academic Improvement Plan ("Plan"), which called for after-school tutoring, a follow-up meeting in six weeks, and "informal screening" of M.M. The Mother testified she understood this screening would be disability testing. The Board

presented testimony that informal screening was not an IDEA function and the two tests given to M.M. during the six-week period were not given as part of an ESE evaluation. The Plan did not recommend exceptional student services, and the director of Three Oaks's ESE program testified that they did not usually make ESE referrals during an initial Plan meeting. M.M.'s aunt asked if procedural safeguards applied; school officials told her they were not necessary for a Plan.

At the meeting, the Mother also requested M.M. be tested for attention deficit disorder ("ADD"). School officials told her that M.M.'s pediatrician was the appropriate party to perform such an evaluation. Later in October, the Mother obtained ADD diagnostic forms from M.M.'s pediatrician, which M.M.'s teachers filled out.

On 20 November 2001, before the follow-up meeting was scheduled to take place, a teacher overheard M.M. making a threat against another teacher, Mrs. Jones. M.M. said "If she gives me another bad grade I'm going to kill her." The teacher wrote up the incident as a threat of violence against a teacher, for which the School Board had a zero-tolerance policy.

At M.M.'s disciplinary hearing on 29 November 2001, M.M. was suspended for ten days and was assigned to the school district's Alternative Learning Center ("ALC") for forty-five days. M.M.'s parents told school officials M.M. had been

diagnosed with ADD.[1]   M.M.'s parents requested that he be given IDEA procedural safeguards, including an administrative due process hearing before the Division of Administrative Hearings ("DOAH"). The Mother testified that the Three Oaks principal told them that M.M. did not qualify for IDEA procedural safeguards because he did not have a disability; the principal testified she did not say this.

On 7 December, the school sent a letter to M.M.'s parents advising them of the hearing's outcome and that the parents could obtain a review of the decision. The same day, the parents retained a psychologist to evaluate M.M.  On 10 December, the parents delivered a letter to Three Oaks requesting that M.M.'s grades and discipline records be available for pickup the next day and that certain forms which the new psychologist would use for evaluation be filled out by M.M.'s teachers.  The school did not comply.  On 13 December, when M.M.'s mother attempted to enroll him in ALC, she was informed she could not do so until 8 January.

On 14 December, M.M.'s parents sent a letter to the Superintendent of the school system, stating that the October meeting had placed the School District on notice that M.M. had a potential disability.  The letter requested that school

_____

[1]In fact, M.M.'s pediatrician had declined to diagnose M.M. with ADD.

officials comply with the parents' requests for forms and invoked the IDEA's "stay put" clause to try to keep M.M. in regular classes. See 20 U.S.C. § 1415(j). The letter asked for an IDEA due process hearing if those requests were not granted.[2]

On 18 December, the parents sent the District's staff attorney a letter requesting an IDEA due process hearing. The attorney's response, regarding both letters, was that the school district did not agree that M.M. was entitled to IDEA procedural safeguards. The attorney offered a reminder that the parents could request a due process hearing regarding M.M.'s assignment to ALC. On 20 December, the parents sent a letter to the District's attorney clarifying that they wanted an IDEA due process hearing. The parents declined the due process hearing about the ALC assignment and began home schooling M.M. on 20 January.

The parents made two more requests for an IDEA due process hearing, on 7 and 10 January. The School District's attorney again advised the parents that they were not entitled to an IDEA due process hearing, and no due process hearing was ever held. According to the director of the Board's ESE program, this incident

_____

[2]Whether M.M.'s parents' letters before 20 December clearly asked for a due process hearing under IDEA was disputed. This issue does not change our analysis; so for clarity we will refer to these requests as for IDEA due process hearings.

was the only time in at least the previous three years that a parent requested an IDEA due process hearing and was not given one.

Although a Florida Department of Education Rule requires schools to provide copies of education records to parents within thirty days of a request for the records, M.M.'s records were not produced until 30 January, more than thirty days after the request. M.M's father identified two other specific parts of the record that were turned over after 30 January. The Board claimed that production was delayed because (1) the school-system's two-week winter break was between the request for records and their delivery and (2) M.M.'s records were difficult to locate while being transported to and from the ALC facility.[3] Before the request for the cumulative file, Three Oaks had given M.M.'s father copies of records he specifically requested.

M.M.'s family brought suit under 42 U.S.C. § 1983, claiming the Board's failure to deliver M.M.'s complete records in thirty days and to provide M.M. an IDEA due process hearing or forward their request for a due process hearing to DOAH violated their right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution.

---

[3]Plaintiffs admitted that the winter break and records being transported to and from ALC likely caused some delays in Three Oaks' production of M.M.'s records.

## DISCUSSION

We review de novo a district court's denial of a motion for judgment as a matter of law. Etienne v. Inter-County Sec. Group, 173 F.3d 1372, 1374 (11th Cir. 1999). We consider the evidence in the light most favorable to the nonmoving party. Id. We look to see if "the evidence presents sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986)). If the facts and inferences overwhelmingly support one party, such that reasonable people could not disagree about the verdict, then the motion should have been granted. Id.

We conclude that the district court erred in not granting judgment as a matter of law because Plaintiffs failed to present evidence sufficient to create a jury question about whether the Board's policy or custom inflicted their damages; so, we do not reach Defendant's other arguments.

Municipal Liability under 1983

At the outset, we stress that Plaintiffs sued the School Board itself, rather than any individual officers of the School District. Local government bodies, such as school boards, may be held liable under § 1983 only for acts "'of the municipality' -- that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. Cincinnatti, 106 S.Ct. 1292, 1298 (1986); see Cuesta v. School Board of Miami-Dade County, 285 F.3d 962, 967 (11th Cir. 2002). This "'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur, 106 S.Ct. at 1298. Plaintiffs have the burden to establish the existence of a municipal policy.

State law determines which bodies or persons may establish municipal policy. Jett v. Dallas Independent School District, 109 S.Ct. 2702, 2723-24 (1989). Under Florida law, final policymaking authority for a school district is vested in the School Board. Fla. Stat. Ann. § 230. 22(1) (2001) (now codified at § 1001.41). The Superintendent may recommend policies to the School Board, but is not given authority to make final policy without the Board's approval. Fla. Stat. Ann. §

9

230.32 (2001) (now codified at § 1001.49). Nor does state law authorize any other employee to make final policy for the Board. "[A]lthough authority to make municipal policy may be . . . delegated by an official who possesses such authority[,]" Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989), there is no evidence the Board delegated its policymaking authority.

Because Florida law identifies the School Board as the policymaker for the School District, a single decision by the Board may constitute School Board policy, even if not phrased as a formal policy statement. Cuesta, 285 F.3d at 967-68; Jett, 109 S.Ct. at 2723-24. If, before a decision becomes final, the School Board ratified the decision of a subordinate who did not have final policymaking authority, the Board will be liable for that decision. Garvie v. City of Fort Walton Beach, 366 F.3d 1186, 1189 (11th Cir. 2004); Thomas v. Roberts, 261 F.3d 1160, 1174 (11th Cir. 2001), vacated on other grounds by, 122 S.Ct. 2653 (2002), reinstated by 323 F.3d 950 (11th Cir. 2003).

The School Board will also be responsible for multiple acts by subordinates that constitute a custom, if that custom caused the plaintiff's injury. McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004). A custom is a practice that has not received official approval, but is "so settled and permanent that it takes on the force

10

of the law." Id. Showing an isolated incident is not enough to establish custom; the practice must be "persistent and widespread." Id.

The Due Process Hearing

For the Board to be liable under § 1983, Plaintiffs were required to show the decision to deny M.M. an IDEA due process hearing was (1) made pursuant to a custom or (2) made pursuant to a preexisting formal Board policy or (3) made directly by the Board, as the policymaker for the School District or (4) ratified by the Board before the decision became final.

Plaintiffs presented no evidence that any other students had ever been denied an IDEA due process hearing; therefore, Plaintiffs cannot establish the denial was made pursuant to a custom. Plaintiffs do not point to a preexisting formal Board policy and so do not establish that the decision to deny a hearing was made pursuant to a preexisting official policy that compelled no hearing. Therefore, Plaintiffs must establish that either the Board itself made the decision to deny M.M. (in particular) an IDEA due process hearing or that the Board ratified the decision before it became final. So, we turn to the evidence Plaintiffs presented about who made the decision to deny M.M. an IDEA due process hearing.

11

Plaintiffs established: that the School District's ESE Director was part of a group that determined M.M. was not eligible for the hearing; that this group met with the Superintendent and discussed with him that M.M. was not eligible for the hearing; and that the School District's staff attorney, who typically arranged IDEA due process hearings with DOAH, communicated the decision to Plaintiffs.

But none of this evidence demonstrates that the Board itself made or ratified the decision. Plaintiffs presented no evidence that any of these individuals communicated with the Board members about M.M.'s situation. The only evidence Plaintiffs presented that the Board made – or ratified – the decision were the letters from the School District's staff attorney informing M.M.'s family of the decision to deny M.M. the due process hearing. We therefore turn our examination to these letters.

The District's staff attorney's letters were written on School District stationery that listed the School Board members on the letterhead. The letters stated that "The District respectfully disagrees that . . . [M.M.] is entitled to the [IDEA's] procedural safeguards" and "The District . . . does not believe that the IDEA applies to [M.M.]" These statements raise questions about whether this determination represented School Board policy. But, the letters do not say that the Board made the pertinent IDEA decision for M.M. nor indicate that the Board even

knew about M.M.'s situation.  Nor do Plaintiffs establish that the School District's staff attorney was speaking for the Board when he wrote the letters - or that he ever had been authorized to speak for the Board.  The letterhead itself specified that a different person was the "Board Attorney."  The attorney who wrote the letters was a staff attorney of the School District.  Standing alone, the letters, which speak only of "the District" and were written on behalf of an unspecified decision maker, are insufficient to establish that the School Board made any decisions about M.M.

Plaintiffs do not present evidence apart from the letters to demonstrate that the letters were communicating a Board decision, or that any Board members even knew about M.M.'s situation before the lawsuit was filed.  Plaintiffs never point to a Board vote or other act or to a formal Board policy.  Plaintiffs present no evidence that the Board discussed M.M.'s situation with anyone, including the School District's staff  attorney.

The most favorable construal of Plaintiff's evidence is that an ex officio member of the Board, the Superintendent, made the decision to deny M.M. a due process hearing.  With no evidence of any action – or even knowledge – by the Board itself about M.M., this is insufficient to establish the Board had a policy.

It is also insufficient to establish that the Board ratified the decision.  To establish ratification, Plaintiffs must "demonstrate that local government

13

policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis" before it became final.  Id.; Thomas, 261 F.3d at 1174.  As discussed above, no language in the letters or evidence in the trial record indicates the Board even knew about M.M.'s situation when the attorney's letters were written.  Therefore, the attorney's letters do not show that the Board had reviewed and agreed with the decision and its basis.

Plaintiffs did not present sufficient evidence to create a jury question on whether a Board policy or custom was the moving force behind denying M.M. a due process hearing.  Defendant's motion for judgment as a matter of law should have been granted.

Production of Complete Student Records

Plaintiffs argue that the Board had a custom of delaying production of complete student records to families of children with disabilities.  Plaintiffs presented testimony from two families of disabled children.  The first requested records in September 1998; the mother testified she began receiving records the following February or March, after she had filed for an IDEA due process hearing. The second began litigation over records around September 1999.  This mother

testified that she did not receive records in thirty days, might have received some within sixty days, and sporadically received more records throughout her litigation over them.

The delay in producing M.M.'s records involved significantly different circumstances. First, the district had not identified M.M. as a disabled student, as it made clear when it denied him an IDEA due process hearing. Therefore, the denial of his records could not be pursuant to a custom of delaying complete copies of records to disabled students, as Plaintiffs argue. In addition, peculiar circumstances arose during the thirty days following the request for M.M.'s records. For two weeks, the school system was on winter break; and few employees were available to gather and copy records. Also, M.M.'s records were moved among several locations because of his transfer to ALC and later withdrawal from the school system. The Board presented uncontested testimony that this movement complicated finding the records and delayed their production. Neither reason excuses the Board's failure to provide the records within thirty days; but, they do show that extenuating circumstances created a delay in the production of M.M.'s records.

Although evidence shows that students' records were delayed in three instances, that circumstance alone does not establish a custom; there must be some

15

connection between the three incidents. See Church v. City of Huntsville, 30 F.3d 1332, 1346 (11th Cir. 1994) (determining year-old incidents of homeless persons being arrested and removed from city were not shown to be connected to current incidents as necessary to support pervasive practice of displacing homeless persons). In this case, the difference in whether the district perceived the students as disabled, the two-year time gap, and the peculiar administrative difficulties of M.M.'s situation make M.M.'s case materially different from the other incidents and make Plaintiffs' evidence inadequate to show a sufficient connection between the incidents to demonstrate a custom. Defendant's motion for judgment as a matter of law should have been granted.

Because the evidence overwhelmingly supports Defendant's position that the Board did not have a policy of denying students not yet determined to be disabled access to IDEA due process hearings or a custom of delaying production of complete records to disabled students, we determine that the district court erred in not granting Defendant's motion for judgment as a matter of law. The decision of the district court is therefore

REVERSED.