Curtis SHERROD, Plaintiff,

v.

PALM BEACH COUNTY SCHOOL DISTRICT, Defendant.

No. 02–80764–CIVDTKH.

United States District Court, S.D. Florida.

March 26, 2006.

Dedrick D. Straghn, Delray Beach, FL, for Plaintiff.

Vicki Lynne Evans, The School District of Palm West Palm Beach, FL, Boynton Beach, FL, Jean Marie Middleton, Julie Ann Rico Allison, Sonia Elizabeth Hill, School Board of Palm Beach Office of General Counsel, West Palm Beach, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW & VACATING & SETTING ASIDE JURY VERDICT

HURLEY, District Judge.

Curtis Sherrod, a public school teacher and plaintiff in a § 1983 action, established to a jury's satisfaction that the superintendent of schools, a subordinate of the school board, retaliated against him for having engaged in protected speech. He failed to establish, however, that the school board, which is the final policymaker for the district, endorsed or otherwise bore legal responsibility for impermissible retaliation. Because this is an essential requirement for § 1983 liability, the court will grant the defendant school district's motions for judgment as a matter of law and will vacate and set aside the jury's verdict for the plaintiff.

At trial, Mr. Sherrod contended he was retaliated against for having spoken out publically about perceived deficiencies in the district's effort to comply with a state law requiring the infusion of African and African–American studies in the curriculum. The court ruled that such speech, if made, would be entitled to protection under the First Amendment. The school district defended on the theory that Mr. Sherrod was terminated for unsatisfactory performance which was observed during two site-assistance plans at different schools. Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, the district moved for judgment as a matter of law at the conclusion of the plaintiff's case-in-chief and again at the close of all the evidence. The court reserved ruling on both motions and submitted the case to the jury with specific instructions on ratification and deliberate indifference. The jury returned a verdict for the plaintiff, finding ratification, and awarded $46,692.96 for back pay and $350,000. for emotional pain and mental anguish. The verdict form, which was approved by both parties, instructed the jury not to answer the question on deliberate indifference if the jury answered "yes" to the question on ratification.

Thus, at this point in the litigation, a verdict for the plaintiff has been returned, but judgment has not been entered, and a motion for judgment as a matter of law remains outstanding. The Supreme Court anticipated such an occurrence in *Unitherm Food Systems, v. Swift–Eckrich, Inc.,* —— U.S. ——, 126 S.Ct. 980, 988, 163 L.Ed.2d 974 (2006), where it said that "while a district court is permitted to enter judgment as a matter of law [pursuant to Rule 50(a)] when it concludes that the evidence is legally insufficient, it is not required to do so. To the contrary, the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions." Rule 50(b), of the Federal Rules of Civil Procedure, permits a movant to "renew its request for judgment as a matter of law by filing a motion no later than 10 days *after entry of judgment ....*" (emphasis supplied), *see Presutti v. Fed. Deposit Ins. Corp.,* 24 Fed.Appx. 92 (2d Cir. 2001) (holding that "entry of judgment" occurs when the clerk records the judgment on the docket); *see also* Rule 58, Fed.R.Civ.P., but a Rule 50(b) motion is unnecessary where the district court reserves ruling on a party's Rule 50(a) motion until after the jury returns its verdict. *See Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 n. 4 (11th Cir.2002). Moreover, the district's post-trial written memorandum in support of its oral motion for judgment as a matter of law is the functional equivalent of a renewed motion under Rule 50(b). Accordingly, the court will address defendant's outstanding motions for judgment as a matter of law.

For this purpose, it must view the evidence in a light most favorable to the plaintiff, and must not weigh the evidence nor assess witness credibility. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); and *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002).

Because "[j]udgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim ...," *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir.2004), it is appropriate to begin with a review of the legal framework surrounding a § 1983 action. Title 42 of the United States Code, § 1983, provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." *See generally Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). The right to free speech is guaranteed by the First Amendment of the United States Constitution and, therefore, "[a] state may not demote or discharge a public employee in retaliation for protected speech." *Morgan v. Ford*, 6 F.3d 750, 753–54 (11th Cir.1993).

In the seminal case of *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that local governmental entities such as school boards could be liable under § 1983 for constitutional torts. At the same time, the Court cautioned that liability would attach *only* if the final policymakers of the governmental entity—as opposed to its subordinates and employees—caused the deprivation. The court noted that the doctrine of *respondeat superior*, the tort principle which holds an employer liable for the acts of an employee committed in the course and scope of the employment, does not apply in the § 1983 context. The Court reasoned that "Congress did not intend municipalities [or other local governmental entities] to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused the constitutional tort." *Ibid.*, 436 U.S. at 691, 98 S.Ct. at 2036.

As case law has developed, local governmental entities have been found liable under § 1983 for constitutional deprivations where the plaintiff proved that (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, or (2) the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, or (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, or (4) the policymakers of a local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate or employee.

To keep the focus riveted on final policymakers, as opposed to subordinates or employees, the Supreme Court dictated a required approach. First, the trial court must apply state law and identify the local governmental entity's final policymakers. "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." As with other questions of state law relevant to the application of

federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the judge *before* the case is submitted to the jury.... [T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have cause the particular constitutional or statutory violation at issue. Once those officials who had the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decision have caused the deprivation of rights at issue by policies which affirmatively command that it occur.

*Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

In the case at bar, the court applied Florida law and ruled that the multi-member school board was the final policymaker for the defendant Palm Beach County School District. *See* Sections 1001.32(2), 1012.22 and 1012.33, Fla. Stat. (2005); *see also K.M. v. Sch. Bd. of Lee Cnty. Fla.*, 150 Fed.Appx. 953 (11th Cir.2005).

During discussions following the first and second day of trial, plaintiff's counsel indicated he did not intend to prove that the members of the school board acted with an impermissible retaliatory motive when voting to discharge Mr. Sherrod. Answering the court's question, "[I]s it the Plaintiff's contention the individual School Board members had the intention to retaliate? Is that something you are trying to prove?" Counsel responded, "No, no." He explained that the plaintiff was relying chiefly on theories or ratification and deliberate indifference. (Tr. 396–98). Without

holding the plaintiff to his announced theories of recovery, the court will examine the evidence to determine whether there is any basis to hold the school district liable under § 1983.

■ First, the court will consider whether the plaintiff put forth evidence to show he was discharged because of a retaliatory policy. *See generally, Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed.Appx. 711 (7th Cir.2004); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595 (5th Cir. 2001). Recognizing that "a single decision by the Board may constitute School Board policy," *K.M. v. Sch. Bd. of Lee Cnty. Fla.*, *supra* at 957, the court has searched the record for any proof that a member of the school board—let alone a majority of its members, *see Matthews v. Columbia Cnty.* 294 F.3d 1294 (11th Cir.2002) (An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.)—harbored impermissible retaliatory animus toward Mr. Sherrod. Absent proof of retaliatory animus by a majority of the board or proof of a board policy which *prima facie* evidences an impermissible animus, the district cannot be subject to liability under this theory.

■ Next the court will examine the evidence to see whether the plaintiff offered proof of a custom or usage within the school district to terminate outspoken teachers. *Monnel* held that a local governmental entity could be held liable for unconstitutional acts of employees that occur pursuant to a municipal "custom." The Eleventh Circuit in *Griffin v. City of Opa–Locka*, 261 F.3d 1295 (11th Cir.2001) set forth the applicable standard. "To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Similarly, in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir.2004), the court said that "[o]ur precedents are clear that, for constitutional violations to be sufficiently "widespread" for a governmental supervisor to be held liable, they need occur with frequency .... " The evidence in the case at bar is devoid of any suggestion of a custom or practice of retaliation against outspoken teachers. Therefore, this theory cannot be used to support a verdict against the school district.

██ Next the court will examine the evidence to determine if the plaintiff's evidence could support a theory of delegation. "Local government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the decision is not subject to review by the policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir.2002). In the case at bar, it is undisputed that Superintendent Johnson recommended Mr. Sherrod's discharge to the school board which considered and voted to adopt the recommendation in an open meeting. Thus, delegation is not a viable theory in this case.

██ As previously noted, plaintiff's counsel indicated he was relying on theories of ratification and deliberate indifference. He stated, "[T]he School Board ratified the acts of their subordinates by having knowledge of this and not investigating it, ultimately terminating him, even though they were aware that these things were going on." (Tr. 150). With this in mind, the court will first examine the evidence to determine if it is sufficient to support the theory of ratification. "For plaintiffs to state a successful § 1983 claim against a municipality [or

other local governmental entity] based on a ratification theory ... they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis ...." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1175 n. 12 (11th Cir.2001)); *see also Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir.2006); *Dempsey v. City of Baldwin*, 143 Fed.Appx. 976 (10th Cir.2005); *Hall v. Marion Sch. Dist. No.2*, 31 F.3d 183 (4th Cir.1994). The Fifth Circuit offered this example of ratification and its inherent limitation. "[I]f a school board—a policymaker under *Monell*—approves a superintendent's decision to transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the governmental entity itself may be liable; but if the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and so the district itself is not liable." *Milam v. City of San Antonio*, 113 Fed.Appx. 622, 626 (5th Cir. 2004). Assuming for the sake of argument that Superintendent Johnson harbored an impermissible retaliatory animus toward Mr. Sherrod, there is no proof in the record that any member of the school board, much less a majority, agreed with the allegedly impermissible motive. Consequently, the record evidence will not support a judgment against the school district premised on the legal theory of ratification.

Finally, there is the theory of deliberate indifference. As noted above, the jury did not reach this issue due to instructions on the verdict form. Nonetheless, because defense counsel's arguments in support of the motions for judgment as a matter of law can be read reasonably to suggest that

there was no basis in the evidence to support a claim against the district, the court will examine the evidence for this theory as well. Upon reflection, the court has concluded that it erred in denying defendant's motion to admit into evidence the finding of an administrative law judge that the district was justified in discharging the plaintiff for unsatisfactory performance. *See* Section 1012.33, Fla. Stat. Although the issue was never argued by either party in terms of its relevance to the theory of deliberate indifference, in retrospect it seems obvious that what the board knew when it determined to stand by its earlier decision to discharge the plaintiff is highly relevant to an evaluation of whether the board acted with deliberate indifference. Today, however, in examining the evidence, the court will limit itself to the record. *See Cleveland v. Home Shopping Network, Inc., supra* at 1192.

Although the Eleventh Circuit has not addressed whether deliberate indifference is a viable theory in the context of a § 1983 action claiming retaliation for having engaged in protected speech, other circuits have permitted its use. *See Ware v. Unified Sch. Dist. No. 492, Butler Cnty.,* 902 F.2d 815 (10th Cir.1990); *San Filippo v. Bongiovanni,* 30 F.3d 424 (3rd Cir. 1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); and *Jeffes v. Barnes,* 208 F.3d 49 (2d Cir.2000). The Tenth Circuit in *Ware* approved the application of deliberate indifference in the following context.

There is evidence in the record to support Ware's claim that the Board acted with deliberate indifference to her First Amendment rights in approving her termination .... The record contains evidence that board members knew about Ware's public stand on the bond issue and were informed of her belief that her termination was in retaliation for that stand .... Notwithstanding the above

indications.that the board knew [the superintendent's] recommendation was in retaliation for Ware's position on the bond issue, the board made no independent investigation, asked [the superintendent] no questions about the reasons for his decision .... The evidence is sufficient to create a jury question on whether the board acted with deliberate indifference to Ware's First Amendment rights in approving [the superintendent's] recommendation. *Id.* at 819–20.

Relying on these cases, and noting that the Eleventh Circuit has approved the deliberate indifference theory in other contexts, *see, e.g., Mandel v. Doe,* 888 F.2d 783 (11th Cir.1989) (finding § 1983 liability based on deliberate indifference by a delegated final policymaker), the court gave the following instructions to the jury in the case at bar.

The second or alternative legal theory the plaintiff is relying on to establish a violation of his First Amendment rights is called "deliberate indifference."

To act with "deliberate indifference" means to act with disregard to the risk that the particular constitutional violation would follow. "Deliberate indifference" in this context exists where an adequate investigation of the issue at hand would lead a reasonable policymaker to conclude that a plainly obvious consequence of his decision would be the deprivation of constitutional rights of persons with whom the employee(s) come into contact.

To prevail on his claim of deliberate indifference, the plaintiff Mr. Sherrod must prove each of the following facts by a preponderance of the evidence:

*First:* That a majority of the school board had reasonable cause to believe that the professional standards investigation provided with the Superinten-

dent's recommendation for termination was inadequate or deficient; and

*Second:* A majority of the school board members voted to terminate the plaintiff's employment despite their understanding of a likelihood that the plaintiff's First Amendment rights would be violated by such action. (Tr. 1280–81).

■ Examining the evidence in the light most favorable to the plaintiff, one can find no proof that any member of the school board, let alone a majority, had reasonable cause to believe that the investigation, conducted by the district's office of professional standards, was inadequate or deficient. Undisputed testimony indicated that Mr. Sherrod had been observed by administrators and professional staff over an extended period of time during site-assistance plans at two different schools. None of the reviewing personnel had any connection with Olympic Heights High School in Boca Raton where Mr. Sherrod claimed to have had conflicts with an administrator and colleagues on the coaching staff. Yet, the findings from both site-assistance plans indicated that Mr. Sherrod's job performance did not meet professional standards. These findings were based on observations and recommendations from disparate members of the district's professional and administrative staff. While the Eleventh Circuit has held that an employer's subjective findings of inadequacy will justify a decision to terminate employment, *see, e.g., Bass v. Bd. of Cnty. Comm.,* 256 F.3d 1095 (11th Cir.2001), and *Denney v. City of Albany,* 247 F.3d 1172 (11th Cir.2001), the testimony in this case listed serious, objective deficiencies in Mr. Sherrod's job performance, *e.g.,* locking disruptive children outside a portable classroom without taking them to the school's administrative office as required by school policy and failing to post grades on a timely basis so that parents could have access via the Internet.

The Supreme Court has reminded us that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor [in this case, the school board] disregarded a known or obvious consequence of his actions." *Bryan Cnty. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Similarly, the Eleventh Circuit, albeit in a different context, has held that "in order to establish deliberate indifference, plaintiffs must be able to allege (and prove at trial) that the defendant (1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent." *Maldonado v. Snead,* 168 Fed.Appx. 373 (11th Cir.2006). Turning again to the record in the case at bar, there is no evidence which would permit a reasonable fact finder to conclude that the school board acted with deliberate indifference when it accepted the superintendent's recommendation, supported by the professional staff's report, and voted to terminate the plaintiff's employment.

Accordingly, it is

**ORDERED and ADJUDGED** that the defendant district's motion for judgment as a matter of law, made pursuant to Rule 50(a), Fed.R.Civ.P., at the conclusion of all the evidence, is **granted**, and it is further

**ORDERED and ADJUDGED** that the verdict rendered by the jury in this case is **vacated and set aside.**