[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 20, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-10886

_____

D.C. Docket No. 01-00356-CV-LAC-MD

WILLIAM H. GARVIE,
MARTHA B. GARVIE,
DB DAUGHTERS,

Plaintiffs-Appellants,

versus

CITY OF FORT WALTON BEACH, FLORIDA,
DANIEL CURTIS LEAPHART,
ROBERTA C. LEAPHART,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 20, 2004)**

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE[*], Judge.

_____

[*]Honorable R. Kenton Musgrave, Judge, United States Court of International Trade,
sitting by designation.

TJOFLAT, Circuit Judge:

Plaintiffs William and Martha Garvie claim that they own a piece of land the City of Fort Walton Beach ("the City") unconstitutionally paved over with asphalt. DB Daughters Corp., another plaintiff, claims that it owned land adjacent to the Garvies of which the City also illegally took ownership. All three purported landowners[1] sued under 42 U.S.C. § 1983, claiming that the City had violated the Public Use Clause requirement of the Takings Clause, see U.S. Const. amend V. ("[N]or shall private property be taken for public use, without just compensation." (emphasis added)), as made applicable to the States through the Due Process Clause of the Fourteenth Amendment, see Palazzalo v. Rhode Island, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457, 150 L. Ed. 2d 592 (2001) (noting that "[t]he Takings Clause of the Fifth Amendment [is] applicable to the States through the Fourteenth Amendment"), by taking their land for a private, rather than public, purpose. They also argued that the City violated the Just Compensation Clause by failing to compensate them for the takings, see U.S. Const. amend V. ("[N]or shall private property be taken for public use, without just compensation." (emphasis

---

[1] We call plaintiffs the purported owners of these tracts of land because they never demonstrated their actual ownership to our satisfaction. Given the lack of certainty of their ownership over this land, it would have been appropriate for them to file motions to quiet title in state court to definitively establish their ownership rights before pursuing a federal takings claim.

added)). The district court granted the City summary judgment, and the plaintiffs now appeal.

We begin by noting that this case is poorly pled. The plaintiffs chose to sue the City of Fort Walton rather than individual city employees. Monell v. Dep't of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), specifies the circumstances under which a municipality may be held liable for the unconstitutional acts of its agents. The Court held that a local government is responsible only for "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy." Id. at 694, 98 S. Ct. at 2037-38.

The gravamen of the plaintiffs' complaint is as follows:

On July 25, 2000, at the request of the Leapharts [the plaintiffs' neighbors], the City of Fort Walton Beach officials accompanied by the armed City of Fort Walton beach Police Department illegally entered the Garvie property and paved a portion of the Garvie property over the old asphalt across the waterside of the property to provide a new access way for the Defendant Leapharts which the City now calls South Beach Street. The City officials . . . did so based on a preconceived plan between Malcolm Foley, City Planner, two City Councilmen and the Leapharts without any independent investigation . . . concerning the rightful owner of the asphalted area.

Plaintiffs' Second Amended Complaint ¶ 47. The plaintiffs rely on these facts to support their allegation that "The Defendant City of Fort Walton Beach and the

3

Defendants Leaphart and Long have under color of state law illegally seized a thirty (30) foot wide access right of way across the [plaintiffs'] . . . properties and refused to allow the Plaintiffs to occupy that area." Id. ¶ 50.

Since we are reviewing a grant of summary judgment, we must review the evidence in the light most favorable to the plaintiffs. See Mut. Serv. Ins. Co. v. Frit Indus., 358 F.3d 1312, 1320 (11th Cir. 2004) ("We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was granted."). These allegations, if true, demonstrate unconstitutional behavior on the part of individual city officials (potentially including members of the police force, city councilmen, and the city planner). However, the fact that these officials allegedly acted under color of law at the time of the events of which the plaintiffs complain is not sufficient to establish the City's municipal liability under Monell. Unless these officials acted according to an official City policy, the commands of a final policymaker, or a municipal custom or practice, the City cannot be held responsible for their actions.

Unfortunately, the plaintiffs' complaint does not spell out the connection between the individual officers' actions and the City itself, nor does it articulate a theory under Monell under which the City may be held liable. Consequently, there

is no legal basis upon which the plaintiffs may simply assert that the City, as opposed to individual city officials acting illegally, deprived them of their property.

The complaint points to only two acts that are actually attributable to the City itself, rather than to individual municipal actors. First, it alleges that "the City of Fort Walton Beach illegally denied [a] fence permit to DB Daughters stating that the fence would be erected on a city owner right of way . . . ." Plaintiffs' Second Amended Complaint at ¶ 57. While the Supreme Court has recognized that certain regulations can be so onerous as to constitute a "regulatory takings," denial of a fence permit hardly satisfies this standard. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1027, 112 S. Ct. 2886, 2899, 120 L. Ed. 2d 798 (1992) (holding that a landowner is entitled to just compensation "[w]here the State seeks to sustain regulation that deprives land of all economically beneficial use").

The only other official City act to which the plaintiffs point is a resolution enacted on August 28, 2001, wherein "the City of Fort Walton Beach City Council acting in its legislative capacity voted to claim what the City calls Shell Street and Sound Beach Street as City owned rights of way." Plaintiffs' Second Amended Complaint at ¶ 61. Construing the plaintiffs' complaint extremely broadly, this

5

appears to be the beginning of a "ratification" argument, under which the municipality, by actively endorsing or approving of the conduct of its employees or officials, may be held responsible for it. See Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 998 (11th Cir. 1990) ("[R]atification by the authorized policymakers of a subordinate's reasoning and decision is chargeable to the municipality because their decision is final." (internal quotations omitted)). For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, however, "they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . ." Thomas v. Roberts, 261 F.3d 1160, 1175 n.12 (11th Cir. 2001), vacated on other grounds by, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 829 (2002), reinstated by 32 F.3d 950 (11th Cir. 2003). The complaint never actually sets forth any such allegations, however.

Consequently, it is highly doubtful whether the plaintiffs even stated a § 1983 cause of action against the City. At most, they have made out common law trespass claims against individual city officials.[2] Of course, the City arguably

---

[2] We leave open the question of whether the plaintiffs would be able to make out Fifth Amendment Takings Clause or Due Process Clause claims against the individual governmental defendants who allegedly engaged in the illegal behavior, as the plaintiffs did not include any of them as defendants.

6

waived this point by failing to raise it either before the district court or on appeal. Moreover, as noted above, it is possible—albeit barely—to construe the complaint as raising the faint hint of a ratification argument. Because, in any event, the plaintiffs' claims are utterly meritless, we move past this underlying flaw in their complaint and reject each of their substantive arguments.

Regarding the plaintiffs' Public Use Clause claim, the burden that a government entity must meet under this clause is extremely light. Determinations of whether a particular asserted justification for a taking constitutes a public use is a question of law for a judge. "[W]here the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause." Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 241, 104 S. Ct. 2321, 2329-30, 81 L. Ed. 2d 186 (1984). The district court in this case held, "It is very reasonable to believe that the use of streets and ways would be beneficial to members of the public who will and might use them, not to mention greater accessibility of emergency services to those in the surrounding area." We find that these are legitimate public purposes that a municipality might properly seek to further through its taking power. Consequently, the plaintiffs' Public Use Clause challenge fails.

The plaintiffs' second claim is that, by granting summary judgment to the City, the district court violated their Seventh Amendment right to a jury determination on the issue of whether the taking furthered a public use. We discussed above that judges must decide as a matter of law whether the asserted purpose behind a Taking constitutes a "public use," thereby satisfying the Public Use Clause of the Fifth Amendment. This does not settle the question of whether a particular taking <u>actually</u> furthers that public use. This is a "mixed question of fact and law" that the Supreme Court has held must be determined by a jury. <u>See</u> <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 720-21, 119 S. Ct. 1624, 1644, 143 L. Ed. 2d 882 (1999).

The plaintiffs argue that, by granting the City summary judgment on this issue, the district court denied them their Seventh Amendment right to a jury trial. <u>See</u> <u>U.S. Const.</u> amend. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."). This argument is very misleading. It is beyond question that a district court may grant summary judgment where the material facts concerning a claim cannot reasonably be disputed. <u>See</u> <u>Fed. R. Civ. P.</u> 56(c) (noting that summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

8

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Even though this technically prevents the parties from having a jury rule upon those facts, there is no need to go forward with a jury trial when the pertinent facts are obvious and indisputable from the record; the only remaining truly debatable matters are legal questions that a court is competent to address. See Oglesby v. Terminal Transp. Co., 543 F.2d 1111, 1113 (5th Cir. 1976)[3] ("No constitutional right to a trial exists when after notice and a reasonable opportunity a party fails to make the rule-required demonstration that some dispute of material fact exists which a trial could resolve.").

The true focus of the plaintiffs' argument should not be on whether their Seventh Amendment right was violated, but instead on whether the district court erred in granting summary judgment because a material fact—whether this specific taking furthered the public purpose specified by the City—was in dispute. The district court opinion identified several public purposes that this taking would further, including increased accessibility of the area by members of the public and emergency vehicles. It is almost beyond dispute that the existence of public roads facilitate transportation and make it easier for people and emergency vehicles to

---

[3] See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

9

get to various places. Consequently, the court was correct in awarding the City summary judgment on the issue of whether its taking actually furthered its asserted public purpose.

Finally, the plaintiffs maintain that the taking of their property violated their rights to substantive due process under the Fourteenth Amendment because it was arbitrary and capricious. See U.S. Const. amend XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); see also Waddell v. Hendry Cty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003) ("[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense."). Given our prior finding that this Taking furthered a public purpose, we are unable to conclude that it is wholly irrational or arbitrary. See Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S. Ct. 114, 121, 71 L. Ed. 303 (1926) (holding that an ordinance violates the Due Process Clause's prohibition on "arbitrary" government action only if it lacks a "substantial relation to the public health, safety, morals, or general welfare"). To the contrary, the fact that the public will benefit from the taking strongly suggests that the government

entity has a sufficient rational basis for performing it.[4] We are therefore forced to reject plaintiffs' substantive due process claim.

The plaintiffs' brief alleges at various points that this purportedly unconstitutional taking also overstepped the boundaries of Florida state law. These arguments were never formally developed however, and in general, allegations that local officials failed to comply with state laws are not federal constitutional claims. See First Assembly of God v. Collier Cty., 20 F.3d 419, 421-22 (11th Cir. 1994).

The judgment below is

AFFIRMED.

---

[4] We need not reach the question of whether Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), forecloses property owners from ever successfully articulating a substantive due process claim concerning a takings issue.