[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15167
Non-Argument Calendar

_____

D. C. Docket No. 03-00453-CV-FTM-99-DNF

CLARENCE FISCHER,

Plaintiff-Appellant,

versus

CAPTAIN ELLEGOOD,
SERGEANT REIS,
OFFICER POOSER,
OFFICER FNU HOLLAND,
OFFICER MAYS,
SGT. LAFAYETTE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 6, 2007)**

Before ANDERSON, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Clarence Fischer, a Florida prisoner and <u>pro se</u> litigant, appeals the district court's grant of summary judgment against him on all claims in an action he brought under 42 U.S.C. § 1983 against various employees of the Lee County Jail, the facility at which he was housed during the events underlying this lawsuit.

**I.**

Fischer's sworn complaint described the events and conditions that resulted after Jail employees, under the direction of Sergeant Reis, implemented a "lockdown," which included the racial segregation of prisoners in his cell block, on April 23, 2003. The affected inmates were split along racial lines into four separate cells, some with as many as seven inmates per cell, where they were kept for two weeks. One of the cells had broken plumbing, the inmates were not allowed to shower or otherwise maintain personal hygiene, and Fischer and the other inmates were forced to sleep on the floor and on other inmates' bunks with soiled bed linens. Another ill effect of the "hostile environment" that "erupted" in Fischer's cell was a fight that broke out in which Fischer was injured "by being struck." Also, Fischer was hit with "bodily fluids" because of all the "urine throwing and . . . spitting" that took place during the inmates' close confinement (once even in front of Officer Mays and another officer).

2

Throughout the lockdown, Officers Mays, Holland, and Pooser repeatedly misled the inmates as to when they would be returned to their regular cells and denied Fischer's requests to speak with their superiors about the situation. So, on April 26, 2003, Fischer lodged a written grievance. But instead of ending the lockdown and segregation, Sergeant Lafayette and 15 to 20 other officers retaliated. They conducted a "shakedown" during which Fischer "and others received pepper spray" after hearing Sergeant Lafayette at one point tell the other officers to "make sure [the inmates] get something in their face." Several other inmates were beaten.

The next day, after being returned to a locked down and segregated state, Fischer filed another written grievance, this time to Captain Ellegood, the Jail's "facility commander." This, too, was ignored and in fact remained unaddressed as of November 2003, when Fischer filed his "second amended complaint."

As a result of what he calls "this whole ordeal," Fischer says that he endured "fear, stress, and suffering." And although he has abandoned the issue on appeal, Fischer also claimed in his sworn complaint that, in retaliation for his written grievances and for bringing this lawsuit, Jail employees deprived him of medication for his mental and physical conditions, including his "Bi-Polar, Manic Depressive state." The resulting mood swings landed Fischer in "altercations" in

3

which he suffered a "broken nose and other [unspecified] injuries."

On the basis of these allegations, Fischer sued the defendants, in both their official and individual capacities, claiming "racial discrimination, segregation, harassment, and cruel and unusual punishment under the 8th Amendment." He also claimed violations of his rights under the First Amendment, and "any other violations or laws that I have missed."

After the defendants filed answers, Fischer filed a motion for appointed counsel, which the district court denied, and the defendants ultimately moved for summary judgment. The district court granted summary judgment in favor of all defendants, as to all claims. Fischer timely appealed.

## II.

Summary judgment is appropriate if the record reveals no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A district court's order granting summary judgment is reviewed de novo, "viewing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).

We review the denial of a motion for appointed counsel for abuse of discretion. Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999).

**III.**

On appeal, Fischer raises five issues warranting discussion.[1] We address each of these issues, though in an order somewhat different from the order he presents them in his brief.

**A.**

First, we consider Fischer's only argument bearing on the district court's grant of summary judgment to the Jail employees in their official capacities. In reaching its result, the district court reasoned that Fischer's evidence failed to identify a practice, policy, or custom of the Lee County Jail that was a "moving force of injury" to him. Fischer argues simply that he "did list all of the customs, policies, procedures, and rules and regulations violated [by] the defendants actions" by attaching to his complaint his formal grievance to Captain Ellegood. Given our obligation to view pro se pleadings liberally, Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976), he argues that there is a genuine issue of material fact on this point.

An official-capacity suit is, "in all respects other than name, to be treated as

_____

[1] In addition to the five issues we address in this opinion, Fischer also repeatedly suggests that the district court violated his Seventh Amendment right to trial by jury when it granted summary judgment in favor of the defendants. We have rejected this line of reasoning in the past and therefore see no reason to discuss the argument again here. See Garvie v. City of Fort Walton Beach, Fla., 366 F.3d 1186, 1190 (11th Cir. 2004).

a suit against the entity [of which the defendant is an agent]." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985). To prevail under § 1983 against that entity, a plaintiff must show that the entity itself was the "moving force" behind his constitutional deprivation, and the only way to do that is by identifying a "'policy or custom' [of the entity that] played a part in the violation of federal law." Id.

In light of these principles, the district court correctly granted summary judgment on the official-capacity claims. Fischer did in fact identify a policy of the Lee County Jail in the formal grievance he submitted to Captain Ellegood. The grievance cited the "Inmate Rules and Regulations" as providing two showers a week for those inmates in disciplinary confinement and daily showers for all other inmates. But the claim Fischer made in his formal grievance and in his § 1983 complaint (and that he makes again before us) is not that this policy was constitutionally deficient, but that individual agents of the Lee County Jail violated it. We will take up this particular alleged policy violation when we examine the relevant Eighth Amendment claim against the defendants in their individual capacities, but for present purposes there is no question that Fischer has failed to present evidence of any Lee County policy or custom that "played a part" in the deprivation of his rights. In other words, he has shown no evidence that the county

6

itself (as opposed to individual officers) violated his rights.

**B.**

Second, we address Fischer's Eighth Amendment excessive-force claim, which is based on the pepper spray incident. In granting summary judgment on this claim, the district court cited the absence of evidence "that the . . . spray was used for any other purpose . . . than to restore order," or that Fischer incurred any injury from the spray. Fischer does not mention the injury issue in his brief, but instead says that he has presented evidence in the form of his sworn complaint that the spraying was "wanton and deliberate and not necessary as no situation or threat of safety ever existed." This, he says, means that summary judgment was improper.

To establish a claim for excessive force in violation of the Eighth Amendment, a plaintiff must show (1) that the force was "sadistically and maliciously applied for the very purpose of causing harm," Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002), and (2) that more than a de minimis injury resulted. See id.

Even assuming that Fischer presented sufficient evidence of an injury (which we doubt), summary judgment is due to be affirmed on the excessive force claim because nothing in the record suggests the officers used the pepper spray

7

with the malicious intention of causing harm to Fischer. In support of their summary judgment motions, the defendants produced two "OC Spray Compliance Forms" and the affidavit of Sergeant Lafayette, all of which indicated that officers sprayed inmates Delamos and Armstrong for refusing to follow orders to face the wall during the shakedown. Given this evidence, the burden shifted to Fischer to present "evidence on which the jury could reasonably find for [him]," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986), on the issue of the defendants' subjective intentions when they sprayed the inmates.

Fischer did not carry this burden. In his sworn complaint, Fischer baldly asserted that the officers sprayed him and the others as part of a "shakedown" that was in retaliation for his written grievance of April 26, 2003. He also baldly asserted that the spraying was "unwarranted and cannot be justified therefore being classified as an Improper and Excessive Use of Force." Neither of these statements amount to evidence of what the defendants intended. The same is true for mere promises of "affidavits and live testimony" (as Fischer made in his response to the defendants' motions for summary judgment) or "eight witnesses" (as he made in his brief here).

The only sworn statement Fischer has provided in the course of this litigation approaching relevance to the "malicious and sadistic" standard is the

8

single sentence in his complaint that: "During this shakedown Sergeant Lafayette instructed the Officers to 'make sure they get something in their face' . . . ." The problem, however, is that this statement doesn't actually bear on whether Lafayette or the "Officers" "sadistically and maliciously applied [the spray] for the very purpose of causing harm." Johnson, 280 F.3d at 1321. It certainly does not shed light on any of the five factors we use to determine whether force was used "sadistically and maliciously": "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). Summary judgment was therefore appropriate on Fischer's excessive force claim.

## C.

The third issue we consider also involves an Eighth Amendment claim, but this one deals with the overcrowded and unsanitary conditions Fischer allegedly endured during the lockdown.[2] The district court concluded that the conditions

---

[2] Fischer's Eighth Amendment claim may in actuality be a Fourteenth Amendment claim: If he was a pre-trial detainee during the relevant events (as opposed to a convict serving a prison sentence), Fischer was protected not by the Eighth Amendment's ban on cruel and unusual punishment, but by the Fourteenth Amendment's right to due process. See Hamm v.

9

Fischer experienced were not "so extreme as to have posed an 'unreasonable risk of serious damage' to [Fischer's] health or safety." On appeal, Fischer argues that a genuine issue exists as to this material fact in light of his interrogatory responses and the formal grievance he attached to his complaint.

To establish an Eighth Amendment claim based on prison conditions, an inmate must meet both an objective component, which requires that the conditions be "sufficiently serious," and a subjective component, which requires that the officials acted with "deliberate indifference to prisoner health or safety." Jordan v. Doe, 38 F.3d 1559, 1564 (11th Cir. 1994) (quotation marks omitted). To meet the objective standard, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillan, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992) (quotation marks omitted).

In applying this standard to the present case, we note that 42 U.S.C. § 1997e(a) limits our review of Fischer's conditions-of-confinement claim to only those conditions he included in the formal grievance he submitted to Captain Ellegood. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to

_____

DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985). We are unsure of Fischer's status during the events at issue in this case, but that uncertainty is of no consequence. The "minimum standard" of ensuring inmates with the "basic necessities" is the same regardless of the constitutional provision. Id. at 1574.

10

prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted."). Filed on the fifth day of the lockdown, the grievance mentioned these four conditions: (1) "Some cells had as low as four inmates in them while other cells had as many as seven;" (2) "inmates were not only forced to sleep on bare cement floors but also on other inmates mattresses and linen" (which had not been washed after others' use of those linens); (3) the inmates were deprived of their daily showers; and (4) the inmates' laundry had not been done. Fischer does not mention the laundry issue in his brief, so we deem any claim as to it abandoned. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

When viewed through the applicable procedural filters, it is clear that even a liberal reading of Fischer's sworn statements reveals no constitutional violation as to the three conditions we have before us (the overcrowding, sleeping, and shower conditions). For example, undisputed evidence shows that each jail cell could hold at least four inmates, meaning that the affected cells were never even at double capacity during the lockdown. Even double capacity, the Supreme Court has held, does not violate the constitution absent "deprivations of essential food, medical care, or sanitation." Rhodes v. Chapman, 452 U.S. 337, 347–48, 101 S. Ct. 2392,

11

2400 (1981). Furthermore, Fischer has given us no reason to believe that sleeping on the floor or on unwashed bed linens or being denied showers amounts to either a deprivation of "essential . . . sanitation" (which would be relevant as to Fischer's overcrowding claim) or an Eighth Amendment violation in their own right—at least not when the duration is only five days. See, e.g., Hamilton v. Lyons, 74 F.3d 99, 106–07 (5th Cir. 1996) (no constitutional violation where inmate was denied sheets and showers (among other things) for a three-day period); Hamm, 774 F.2d at 1575 (no constitutional violation where inmate had to temporarily sleep on a mattress on a floor or on a table). In other words, we agree with the district court that Fischer failed to provide evidence of conditions that were sufficiently "extreme" as to "pose[] an unreasonable risk of serious damage to his future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Summary judgment on Fischer's conditions-of-confinement claim was therefore appropriate.

## D.

Next, we consider Fischer's claim of "racial discrimination" stemming from the racial segregation of inmates during the lockdown. The district court construed this claim as an equal protection claim under the Fourteenth Amendment, applied strict scrutiny, and found that the segregation was narrowly tailored to serve the compelling interest of jail safety and security. In his brief, Fischer argues that the

12

threat of violence justifying the lockdown was not racial in nature, and that as a result the racial segregation did not actually separate the alleged aggressor inmates from those who complained of the threats.

We view Fischer's "racial discrimination" claim as an equal protection claim under the Fourteenth Amendment, and thus apply strict scrutiny. See Johnson v. California, 543 U.S. 499, 506, 125 S. Ct. 1141, 1147 (2005) (holding that strict scrutiny is the appropriate standard of review for racial classifications even in the prison context). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." Id. at 505, 125 S. Ct. at 1146 (quotation marks omitted).

Here, the defendants met their burden of showing that the racial segregation served a "compelling governmental interest" by presenting the affidavit of Sergeant Reis, in which he explained that he ordered the racial separation after receiving an inmate's complaint that the white inmates in Fischer's cell block feared violence from the black inmates in that block. Fischer has maintained throughout this litigation that no threat of racial violence ever existed. But even if Fischer is correct about that, he has not refuted Sergeant Reis' explanation of what motivated the decision to segregate. The reason was prison safety (even if Sergeant Reis was mistaken about the true nature of the threat), and prison safety is

13

clearly a "compelling interest" under Supreme Court precedent. See id. at 514, 125 S. Ct. at 1151.

Likewise, the defendants met their burden of showing that the racial segregation was narrowly tailored to neutralize the threat of racial violence. Although the defendants presented a log entry and the affidavits of two officers showing that the segregation lasted from April 23 to April 27, the sworn statement in Fischer's complaint that it lasted two weeks creates a genuine issue of fact as to the segregation's duration. The problem for Fischer is that this factual issue, though genuine, is not material. Indeed, the defendants also submitted the affidavit of Captain Ellegood, in which he explained that one of the Jail's classification supervisors conducted a thorough investigation during the lockdown, and that the segregation ceased "immediately" after she determined that the racial threat no longer existed. Fischer, on the other hand, has pointed to no evidence suggesting that the segregation continued after Jail officials thought the threat of racial violence had passed. He thus has not identified a genuine issue on the material question of whether the segregation was narrowly tailored to secure the safety of inmates and employees at the Jail.

**E.**

Finally, we examine Fischer's contention that the district court violated his

14

Sixth Amendment rights by failing to grant his request for appointed counsel. This contention has no merit. Notwithstanding Fischer's suggestion to the contrary, a plaintiff has no constitutional right to appointed counsel in a civil case. Bass, 170 F.3d at 1320. Rather, a district court has broad discretion in deciding whether to appoint counsel, and should do so "only in exceptional circumstances." Id. Fischer stresses that he is inexperienced in the law, but as we have held before the mere fact that a lawyer's assistance would be helpful does not amount to an "exceptional circumstance" where, as here, the core facts of the case are pretty much undisputed and the legal claims are straightforward. See id. The district court did not abuse its discretion in denying Fischer's motion for appointed counsel.

**AFFIRMED.**