[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12039
Non-Argument Calendar

_____

D. C. Docket No. 07-00028-CV-5-RH-EMT

KERRY DEXTER SUMMERS,

Plaintiff-Appellant,

versus

DONALD C. WINTER,
Secretary of the Navy,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 16, 2008)**

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Kerry D. Summers appeals the district court's grant of summary judgment to

the Navy in his age discrimination and retaliation suit, filed pursuant to the Age Discrimination and Employment Act, 29 U.S.C. § 621 ("ADEA") and Title VII, 42 U.S.C. § 2000e-3(a). In his complaint, he alleged that a new, more rigorous officer training program discriminated against him on the basis of his age, under both disparate treatment and disparate impact theories. He also alleged that he was denied early retirement in retaliation for his filing of a complaint with the Equal Employment Opportunity Commission ("EEOC"). The district court adopted a magistrate's report and recommendation that concluded that Summers (1) did not establish a *prima facie* case of disparate treatment because the new training program was not an adverse action and did not treat Summers any differently than younger employees; (2) did not establish that the new training program had any disparate impact on older workers; and (3) did not establish a *prima facie* case of retaliation because there was no causal relationship between his EEOC complaint and the denial of his request for early retirement.

On appeal, Summers challenges the district court's finding that he did not establish a *prima facie* case of age discrimination or retaliation. He also contends that his Seventh Amendment rights were violated because he was denied a jury trial. Additionally, he argues that the district court erred by not considering various affidavits and articles.

2

## I. EVIDENCE

As an initial matter, Summers cites evidence that the magistrate found to be inadmissible. Because he did not object to the magistrate's rulings on this evidence before the district court, he cannot challenge it on appeal. *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1286 (11th Cir. 2003). He also cites evidence that was not in the record before the district court, which we may not consider. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc). The district court did not err by not considering the various affidavits and articles.

## II. AGE DISCRIMINATION

"We review *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court." *Id.* at 1023. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). If the non-moving party bears the ultimate burden of proof regarding the claim at issue in the motion, that party, in response to the motion, must go beyond the pleadings and establish, through competent evidence, that there truly is a genuine, material issue to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

The ADEA prohibits an employer from discriminating against an employee over 40 years old on the basis of age. 29 U.S.C. §§ 623(a), 631(a). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105 (2000) (quotations, citations, and alterations omitted). However, the ADEA does "not . . . prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 611 (11th Cir. 1987).

Absent direct evidence of an employer's discriminatory motive, a plaintiff may establish his case through circumstantial evidence, using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Chapman*, 229 F.3d at 1024. Under this framework, the plaintiff may establish a *prima facie* case of "an ADEA violation . . . by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual" or that

4

similarly situated younger employees were treated more favorably. *Id.*

Summers clearly met the first and third requirements of the *McDonnell Douglas* analysis. He was 59 years old at the time he participated in the training, within the age group protected by the ADEA. Further, he was qualified to perform his duties as a police officer because at the time of the alleged discrimination he had been a police officer for almost seven years and passed the new training. We thus turn to the second requirement and consider whether Summers demonstrated that he was subjected to an adverse employment action.

An adverse employment action is "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). To constitute a violation, "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Id.* To determine whether an action constitutes a violation, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Summers did not establish that the new training program constituted an adverse employment action. Officers were always required to participate in annual training; this training was simply more rigorous. Moreover, the training only occurred for five days, once a year. Thus, Summers did not demonstrate "a

5

serious and material change in the terms, conditions, or privileges of employment." *See id*.

Moreover, Summers did not satisfy the fourth requirement that a younger person replaced him or that similarly situated, younger employees were treated more favorably. Summers was treated no differently than younger employees. Therefore, he did not establish a *prima facie* case of disparate treatment age discrimination.

Disparate impact claims are also cognizable under the ADEA. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233-41, 125 S. Ct. 1536, 1541-45 (2005). However, "the scope of disparate-impact liability under [the] ADEA is narrower than under Title VII." *Id.* at 240, 125 S. Ct. at 1544. Because age, unlike race or other protected characteristics, "has relevance to an individual's capacity to engage in certain types of employment," an employer is not liable for age discrimination if the adverse impact was attributable to a reasonable, non-age factor. *Id.* at 240, 125 S. Ct. at 1544-45.

To establish a *prima facie* case of discrimination by disparate impact, "a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S. Ct. 2525, 2530 (1982). "[I]t is not enough [for an employee] to simply allege

6

that there is a disparate impact on workers. . . ." *Smith*, 544 U.S. at 241, 125 S. Ct. at 1545. After identifying the specific practice that causes this impact, the employee must prove causation: he "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. F. Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 2789 (1988).

Here, Summers did not show that the new training program had a significantly disparate impact on older officers. While the evidence showed that some older officers found the training program exhausting and some suffered injuries, the record does not reveal the extent of the injuries or whether younger officers also had trouble completing the program. Further, every officer successfully completed the program, regardless of his or her age.

Moreover, the Navy's decision to implement the training program was in response to the September 11 terrorist attacks, a decision based on a reasonable nonage factor. *See Smith*, 544 U.S. at 239-40, 125 S. Ct. at 1544-45 (noting the preclusion of liability as long as the adverse impact was attributable to a "reasonable" nonage factor). Thus, Summers failed to establish a *prima facie* case of disparate impact age discrimination.

## III. RETALIATION

It is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation forbidden by Title VII, the plaintiff must show that: "[(1)] he engaged in statutorily protected activity, [(2)] he suffered a materially adverse action, and [(3)] there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

The first requirement may be satisfied by the filing of an EEOC charge, as it constitutes a "statutorily protected activity." *See id.* Second, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (quotation marks omitted). Third, the causal connection can be established by the "close temporal proximity" between the employer's knowledge of the protected activity and the adverse action. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). However, "mere temporal proximity between knowledge of protected activity and an adverse action

must be very close" to meet the requirement. *Id.* (quotation and alterations omitted). Thus, without more, a time gap of three months or more does not establish a causal connection. *Id.* at 1221.

"After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." *Goldsmith*, 513 F.3d at 1277 (citation omitted). If the employer offers legitimate reasons, "the presumption of retaliation disappears." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). "The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Id.* An employee may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation omitted). "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith*, 513 F.3d at 1277.

Here, assuming Summers established the first two prongs of a *prima facie*

case of retaliation, in that he engaged in statutorily protected expression by filing an EEOC complaint and later suffered an adverse employment action by being denied early retirement, Summers did not establish a causal relationship between the two events. Summers filed an EEOC complaint in December 2005, and his request for early retirement was denied sometime between Spring and September of 2006. The only evidence linking these events was a temporal proximity of several months. Because the temporal proximity was not very close, more evidence was required to demonstrate the causal connection. *See Higdon*, 393 F.3d at 1220. Thus, Summers failed to establish the causal connection necessary for a *prima facie* case. Moreover, even assuming Summers did establish a *prima facie* case, the Navy gave a legitimate nonretaliatory reason, explaining that it denied his request because it would have been prohibited from filling his position after he left. Summers did not demonstrate pretext, as he offered no evidence that the Navy's explanation was not true.

### IV. JURY TRIAL

For the reasons discussed above, there was no genuine issue of material fact for a jury to decide. Thus, Summers' Seventh Amendment right to a jury trial was not violated. *See Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1190 (11th Cir. 2004) (holding that there is no right to a jury trial when a party fails to

10

make the required demonstration that some dispute of material fact exists).

## CONCLUSION

Upon review of the record and consideration of the parties' briefs on appeal, we discern no reversible error. Accordingly, we affirm.

**AFFIRMED.**