[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10668
Non-Argument Calendar
_____

Docket No. 0:12-cv-60682-WPD

LAURANIUS PIERRE,

Plaintiff-Appellant,

versus

CITY OF MIRAMAR, FLORIDA, INC.,
a Florida Municipal Corporation,
GEORGE SCHMIDT, et al.,

Defendants-Appellees,

SHERIFF AL LAMBERTI,
in his official capacity as the Sheriff
of Broward County,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 5, 2013)

Before DUBINA, MARTIN, and EDMONDSON, Circuit Judges.

PER CURIAM:

Laurinus Pierre appeals the district court's partial dismissal of his second amended complaint against the City of Miramar, Florida ("City"),[1] George Schmidt and J.L. Safiy-Stewart ("Defendant Officers"), individually and in their official capacities as City police officers, and Angela McNeal, individually and in her official capacity as Deputy Sheriff of Corrections for the Broward County Sheriff's Office.[2]  Briefly stated, Pierre complains that he was falsely arrested in

_____

[1] Pierre also named as a defendant Keith Dunn, in his official capacity as the City's Chief of Police.  We treat Pierre's claims against Dunn as claims against the City.  See McMillian v. Johnson, 88 F.3d 1573, 1576 n.2 (11th Cir. 1996) ("A suit against a public official in his official capacity is . . . treated as a suit against the local government entity he represents, assuming that the entity receives notice and an opportunity to respond.").

[2] Although Sheriff Al Lamberti (who has now been succeeded by Scott Israel) is named as a Defendant-Appellee in this appeal, Pierre does not challenge the district court's grant of Lamberti's motion to dismiss and asserted no claims against Lamberti in his second amended complaint.

2

violation of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and Florida state law. Reversible error has been shown; we affirm in part and vacate in part and remand.

Pierre's complaint presents these facts, viewed in the light most favorable to Pierre. Pierre heard banging on the front door of his home. Fearing that someone was trying to break in, Pierre grabbed a baseball bat and a shotgun, went outside, and inspected his yard.

While outside, Pierre spoke to his neighbor, Randy Joseph, and Joseph's minor son. Joseph's son told Pierre that someone had tried to break into Pierre's house. Joseph said that he would call the police to report the attempted break-in. Pierre returned to his house.

Shortly thereafter, Officers Schmidt and Safiy-Stewart and at least six other police officers arrived and surrounded Pierre's home with their guns drawn. The officers interviewed Joseph about the attempted break-in, and Joseph gave the officers Pierre's cell phone number. The officers then called Pierre and ordered him to come out of his house with his hands in the air. Pierre complied. Officers kept their guns pointed at Pierre while he was patted down and searched. Schmidt asked Pierre if he owned a gun and where it was. An officer then searched Pierre's home and seized his shotgun. Defendant Officers arrested Pierre.

3

About half an hour after Pierre's arrest, officers interviewed for the first time and secured an affidavit from McNeal, an off-duty Broward County corrections officer who had been visiting the Joseph home. In her affidavit, McNeal said that she was present when Pierre came out of his house carrying a shotgun and that she saw Pierre walk down the road with a shotgun in his hand.

According to Pierre's complaint, surveillance footage shows that McNeal was not present at the scene until after Pierre went back inside his house. Pierre alleges that McNeal falsified her statement to incriminate him falsely for a crime he did not commit, to give Defendant Officers probable cause for the arrest, and to advance her own career.

Pierre was arrested and charged with two misdemeanor offenses: Reckless Display of Weapon, Fla. Stat. § 790.10, and Open Carrying of Weapon, Fla. Stat. § 790.053. The state later dismissed these charges, and Pierre filed this action. The district court granted Defendants' motions to dismiss.[3]

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive dismissal for failure to state a claim, "a

---

[3] Because McNeal filed only a partial motion to dismiss, the district court did not dismiss Pierre's malicious prosecution claim against McNeal. That claim remains pending in the district court and is no issue on appeal.

4

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quotations omitted).  A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

State Law Claims Against City of Miramar:

Pierre asserted three state law claims against the City: (1) false arrest and false imprisonment (Count I); (2) negligent hiring or retention (Count III); and (3) negligent failure to train and supervise (Count IV).

### Count I: False Arrest and False Imprisonment

The district court dismissed Count I, concluding that probable cause existed to arrest Pierre.  Under Florida law, "[t]he existence of probable cause to arrest is an affirmative defense to false arrest." Lewis v. Morgan, 79 So. 3d 926, 928 (Fla.

Dist. Ct. App. 2012).  A complaint may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

For purposes of a Florida false arrest claim, "[p]robable cause for arrest exists where 'the facts and circumstances known to the arresting officers were sufficient to cause a reasonably cautious person to believe that the suspect was guilty of committing a crime.'"  Lewis, 79 So. 3d at 929.  Under Florida law -- subject to exceptions not at issue here -- a law enforcement officer may make a warrantless arrest for a misdemeanor only when the misdemeanor is committed "in the presence of the officer."  Fla. Stat. § 901.15(1).  Thus, in determining probable cause to arrest a person for a misdemeanor, "only the officers' own observations will be considered."  See Peterson v. State, 578 So. 2d 749, 750 (Fla. Dist. Ct. App. 1991).

"[I]nformation that a misdemeanor has occurred in the presence of an officer [may] be imputed from one officer to another" under the "fellow officer rule."  State v. Boatman, 901 So. 2d 222, 224 (Fla. Dist. Ct. App. 2005).  Briefly stated, the "fellow officer rule" allows an arresting officer to "assume probable cause to arrest a suspect based on information supplied by fellow officers."  B.D.K. v. State, 743 So. 2d 1155, 1157 (Fla. Dist. Ct. App. 1999).

6

The existence of probable cause to arrest Pierre is not clear on the face of the complaint. That Defendant Officers personally witnessed none of Pierre's conduct seems undisputed. Thus, for probable cause to have existed -- irrespective of when McNeal first relayed the information set out in her affidavit to Defendant Officers -- McNeal (as an observer) must have qualified as a "law enforcement officer" for purposes of section 901.15(1).

At all times pertinent to this appeal, McNeal was a duly appointed corrections officer with the Broward County Sheriff's Office. We cannot say, as a matter of Florida law, that a correctional officer inherently qualifies as a "law enforcement officer" as that term is used in section 901.15(1).

First, the statutory definition of "law enforcement officer," as referenced in section 901.15, is separate and distinct from the definition of "correctional officer." See Fla. Stat. § 943.10(1), (2);[4] cf. Fla. Stat. § 784.07 (for purposes of the offense of assault and battery on a law enforcement officer, "law enforcement officer" is defined expressly to include correctional officers, as defined in section 943.10). The definitions in section 943.10 focus largely on each kind of officer's primary

---

[4] A "law enforcement officer" is defined as "any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof; who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state." Fla. Stat. § 943.10(1). But a "correctional officer" is defined as "any person who is appointed or employed full time by the state or any political subdivision thereof, or by any private entity which has contracted with the state or county, and whose primary responsibility is the supervision, protection, care, custody, and control, or investigation, of inmates within a correctional institution . . . ." Fla. Stat. § 943.10(2).

responsibilities: either the enforcement of laws and the prevention and detection of crime or the supervision, protection, care, custody, control, and investigation of inmates. See Fla. Stat. § 943.10(1), (2).

Based mainly on the defined duties and responsibilities of each kind of officer, the Attorney General of Florida has twice concluded that law enforcement officers and correctional officers are different under Florida law. See Op. Att'y Gen. Fla. 1998-31 (1998) (based on the powers and duties set forth in section 943.10, law enforcement officers are considered "officers" for purposes of the Florida Constitution's prohibition on dual officeholding while correctional officers are not); Op. Att'y Gen. Fla. 1989-62 (1989) (concluding that, because a correctional officer's responsibilities are "directed toward the supervision, protection, and control of inmates" instead of toward the general public, correctional officers are under no "duty to aid the injured, ill, or distressed in an emergency as are law enforcement officers.").

Given the state's statutory language, the guidance of the state's attorney general, and the absence of decisional authority to the contrary, McNeal seems to be no "law enforcement officer" for purposes of section 901.15(1). If Pierre's conduct was not committed in the presence of a law enforcement officer, the complaint plausibly alleged that Defendant Officers lacked probable cause under Florida law to arrest Pierre. The district court erred in dismissing Pierre's claim

8

for failure to state a claim.  See Cottone, 326 F.3d at 1357.  We vacate the district court's dismissal of Count I and remand for further proceedings.

### *Counts III & IV:    Negligent Hiring and Retention &* *Negligent Training and Supervision*

In his complaint, Pierre merely recited the elements for the causes of action for negligent hiring, negligent retention, and negligent training and supervision. Conclusions are not good enough.  See Twombly, 127 S.Ct. at 1964-65.  Pierre alleged no facts supporting his claims that the City failed to conduct an adequate pre-hire investigation of Defendant Officers, that the City knew or should have known that Defendant Officers were unfit for their positions, that the City later became aware or should have become aware of Defendant Officers' unfitness but failed to take action, or that the City failed to train or supervise Defendant Officers. Because Pierre failed to state plausible claims for relief, dismissal was proper.  See Iqbal, 129 S.Ct. at 1949.

42 U.S.C. § 1983 Claims Against the City & Defendant Officers:

*Defendant Officers (Count V):*

Pierre asserted a section 1983 claim against Defendant Officers based on false arrest and false imprisonment.[5]  Because Defendant Officers had probable cause to arrest Pierre under federal law, Pierre cannot state a claim for relief under section 1983.[6]  See Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004).

Whether officers have probable cause to arrest depends on the elements of the alleged crime.  Crosby v. Monroe Cnty., 394 F.3d 1328, 1333 (11th Cir. 2004).  Under Florida law, it is a misdemeanor "for any person to openly carry on or about his or her person any firearm."  Fla. Stat. § 790.053.

According to Pierre's complaint, Joseph called the police to report the attempted break-in and, when the police arrived on the scene, the police interviewed Joseph about what happened.  Pierre makes no allegations about what

---

[5] Pierre also raised three state law claims against Defendant Officers: (1) false arrest and false imprisonment (Count I); (2) malicious prosecution (Count II); and (3) intentional infliction of emotional distress (Count VIII).  Because Pierre leaves unchallenged the district court's decision not to exercise supplemental jurisdiction over these state law claims, we will not address them on appeal.

[6] Although the existence of probable cause was not established under Florida law, federal law does not restrict the probable cause analysis to conduct witnessed in person by law enforcement officers.  See Knight v. Jacobson, 300 F.3d 1272, 1275-76 (11th Cir. 2002) (explaining that the Fourth Amendment does not require officers to witness a misdemeanor before conducting a warrantless arrest, even when state law imposes that requirement).

10

Joseph told the police during his interview. But, in describing his own conduct that night, Pierre alleged that he left his house with a baseball bat and a shotgun in pursuit of a potential burglar. While outside, Pierre stopped and spoke with Joseph and Joseph's son about the attempted break-in. It is reasonable to infer that, during his interview with the police, Joseph described his interaction with Pierre, including that Pierre was carrying a shotgun out of doors. Pierre also told the officers that he owned a gun, and officers seized his shotgun from his home. Based on the facts known to Defendant Officers at the time of Pierre's arrest, probable cause existed to suspect that Pierre was guilty of violating Fla. Stat. § 790.053. Thus, Pierre cannot state a claim for relief under section 1983 that is plausible on its face.

### *City of Miramar (Count VI):*

To establish the City's liability under section 1983, Pierre must identify an official policy or unofficial custom that caused a constitutional injury. See Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). Because Pierre has failed to allege sufficiently that he suffered a federal constitutional injury, Pierre cannot assert a section 1983 claim against the City. And, even if Defendant Officers violated Pierre's federal constitutional rights -- which we conclude they

did not -- Pierre has still failed to state a claim for municipal liability under section 1983.

In his complaint, Pierre alleged that the City had a policy or custom of (1) "failing to enforce the requirement that officers have probable cause for an arrest before the arrest is made and instead allow[ing] officers to obtain or assert probable cause after an arrest is made because the victim of the arrest will usually become frustrated and plead 'no contest' to avoid jail time"; (2) "permitting officers to turn a blind eye to easily discoverable evidence in determining whether probabl[e] cause exists"; and (3) failing to train or supervise officers.

Pierre alleged no facts supporting the existence of these purported City policies. Pierre also alleged no facts demonstrating that the City ratified Defendant Officers' alleged conduct. See Garvie v. City of Fort Walton Beach, 366 F.3d 1186, 1189 (11th Cir. 2004) ("For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, . . . 'they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . .'"). Dismissal was proper.

<u>Claims Against McNeal:</u>

Pierre asserted two claims against McNeal: (1) violation of 42 U.S.C. § 1983 (Count VII) and (2) intentional infliction of emotional distress (Count IX).

*<u>Count VII: 42 U.S.C. § 1983</u>*

To state a claim under section 1983, Pierre must show that a person acting under color of state law deprived him of a right secured by the Constitution. <u>See Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001). Pierre does not assert that McNeal was a state actor by virtue of her employment with Broward County. Instead, he argues that she was acting under color of state law because she conspired with Defendant Officers to deprive him of his constitutional rights.

A private party may be considered a state actor if she conspired with state officials to commit the alleged constitutional violation. <u>See Dennis v. Sparks</u>, 101 S.Ct. 183, 186-87 (1980). To succeed under this theory, Pierre "must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." <u>See Harvey v. Harvey</u>, 949 F.2d 1127, 1133 (11th Cir. 1992).

Even if one were to assume an underlying violation of federal law, Pierre failed to establish the existence of a conspiracy between McNeal and Defendant Officers. Pierre's conclusory allegations that Safiy-Stewart led McNeal to make specific statements in her affidavit and that McNeal fabricated her affidavit in part to give the police probable cause for the arrest do not establish that McNeal was a state actor for purposes of section 1983. See id.

*Count IX: Intentional Infliction of Emotional Distress*

Under Florida law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." E. Airlines, Inc. v. King, 557 So.2d 574, 575-76 (Fla. 1990). To qualify as "extreme and outrageous," defendant's conduct must have "been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985).

"The standard for outrageous conduct is particularly high in Florida." Clemente v. Horne, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (quotations omitted). "It is not enough that the intent is tortious or criminal; it is not enough

14

that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." Id.

Accepting Pierre's allegations as true, he failed to allege enough facts to demonstrate that McNeal's conduct qualified as "extreme and outrageous" under Florida law. See e.g., Legrande v. Emmanuel, 889 So. 2d 991, 995 (Fla. Dist. Ct. App. 2004) (dismissing plaintiff's claim for intentional infliction of emotional distress because falsely accusing a minister of a crime was not extreme and outrageous behavior).

AFFIRMED IN PART; VACATED IN PART AND REMANDED.